**In the Matter of GEORGETOWN OF KETTERING, Debtor.**

**Bankruptcy No. 3–81–00700.**

United States Bankruptcy Court, S. D. Ohio, W. D.

Nov. 19, 1981.

**74**

Thomas R. Noland, Dayton, Ohio, for Frey.

Horace Baggott, Sr., Dayton, Ohio, for debtor.

John D. Squires, Dayton, Ohio, Donald M. Lerner, Cincinnati, Ohio, for Hunters Savings.

Jack F. Pickrel, Dayton, Ohio, for Record-Creditors' Committee.

Daniel O. Conkle, John Evans, Jr., Cincinnati, Ohio, for estate of Williams.

Robert W. Wertz, Columbus, Ohio, for A. F. I. Bank.

· CHARLES A. ANDERSON, Bankruptcy Judge.

In pertinent part, we note the following factual details. Georgetown of Kettering, Ltd., a limited partnership by one partner filed on March 4, 1981, an involuntary petition under Chapter 11. An order for relief was entered on May 1, 1981.

Previously, on 29 August 1980, Hunter Savings Association had filed a complaint in foreclosure in the Common Pleas Court of Montgomery County, Ohio, against the Debtor and other entities as defendants personally liable on the notes secured by mortgages executed by the partnership including H. Garrett Frey, a comaker as well as partner.

The state court suit was removed to the Bankruptcy Court; and, after trial, a joint and several judgment was rendered in behalf of Hunter in the amount of $5,182,-122.15 with interest.

The court fixed the date of November 23, 1981, to consider the disclosure statement of the debtor-in-possession filed on 23 September 1981 and objections thereto duly filed.

On 7 October 1981 Hunter filed an application for examination of H. Garrett Frey pursuant to Rule 205 of the Rules of Bankruptcy Procedure. From the extensive application, particular attention is drawn only to several pertinent recitations, as follows:

"3. It is manifest from examination of the Disclosure Statements filed herein by both H. Garrett Frey and by Frederic E. Gagel, that even the most optimistic cash flow projection for the Georgetown project would be inadequate to support an addition—as $1,000,000.00 in debt service.

4. Therefore, Hunter Savings Association, as holder of the first mortgage loans on the previous, [sic] is unable to access [sic] the feasibility of Mr. Frey's proposed plans without further information as to Mr. Frey's personal net worth, assets and liabilities in order to determine:
(a) The realistic possibility of his obtaining such additional financing.
(b) His ability to generate or produce the additional moneys required to support the additional debt service."

Attached to the application as Exhibit A is a "Request for Production of Documents and Materials," as follows:

"Pursuant to Rule 34 of the Federal Rules of Civil Procedure, H. Garrett Frey is requested to produce for reproduction as the examination to be held pursuant to Rule 205 of the Rules of Bankruptcy Procedure, on October 19, 1981 the following books, records, documents, writings and other tangible materials or information regarding the following:

1. Any and all personal financial statements of H. Garrett Frey covering the periods from January 1, 1981 to present as well as any and all financial statements of partnership or corporate entities in which H. Garrett Frey has an interest in on or after January 1, 1981.

2. Any and all appraisals made in regard to properties in which H. Garrett Frey had an interest in either personally or as a partner or shareholder on or after January 1, 1981.

3. A current schedule of all assets held by H. Garrett Frey and a current schedule of all debt owed by H. Garrett Frey along with a schedule listing the disposition of any property by H. Garrett Frey or interests therein since January 1, 1981."

Hunter urges that it is unable to assess the feasibility of Mr. Frey's proposed plan as a partner without information regarding Mr. Frey's personal net worth, assets and liabilities, and that this information was not provided in the disclosure statement submitted by Mr. Frey pursuant to 11 U.S.C. § 1125(b).

The issue now before the Court is whether the Court should sanction the use of Bankruptcy Rule 205 as a discovery tool in connection with a hearing to be held by this Court under 11 U.S.C. § 1125(b) to determine Court approval of the instant disclosure statement.

Bankruptcy Rule 205 predates the Bankruptcy Code. The Rule, by its literal meaning, was originally intended to apply only to cases involving bankruptcy and not reorganization. Bankruptcy Rule 205(d). The Court, however, is cognizant of subsequent rule changes which have broadened the scope of Bankruptcy Rule 205 to 11 U.S.C. Chapter 11 cases. See Bankruptcy Rules 11–2–(1) and 11–26.

Obviously, the breadth of the language employed in the Rules is so all encompassing as semantically to include and encourage harassment on every human subject. Nevertheless, abuse of propriety and the judicial process certainly was never contemplated.

Subsequent to the enactment of these rules, the Code established, through 11 U.S.C. § 1125(b), a separate procedure for Court approval of disclosure statements, and this Court has issued Interim Rules 3005 and 3006 to deal with the mechanics of an 11 U.S.C. § 1125(b) hearing. The legal question before the Court, therefore, is whether the discovery procedures of Bankruptcy Rules 205 and 11–26 supplement or were supplanted by the disclosure procedure created by enactment of 11 U.S.C. § 1125(b) and Interim Rules 3005 and 3006.

■ The Court is of the opinion that Bankruptcy Rule 205 should not be made available to determine the adequacy of a disclosure statement. The procedure for Court determination of "adequate disclosure," (11 U.S.C. 1125(a)(1)), was written subsequent to and should operate separately from the aforementioned discovery rules. The function of the disclosure statement is to place upon the Debtor the responsibility of providing adequate information as determined by the Court before soliciting approval of a Proposed Plan of Reorganization. The requirement of a disclosure statement, however, should not be read to infer a corresponding creditor right of a fishing expedition. Although the Debtor is required to disclose his finances in a formal written document, the role of creditors and other parties in interest in the disclosure process is neither supervisory nor participatory. The proper procedure for inquiry by third parties is to object to the disclosure statement under Interim Rule 3006(a) prior to Court hearing on the matter under 11 U.S.C. § 1125(b) and Interim Rule 3006(b).

■■ The sole question before the Court at a hearing held pursuant to 11 U.S.C. § 1125(b) is whether the disclosure statement contains "adequate information" to enable a "hypothetical reasonable investor typical of holders of claims or interests of the relevant class to make an informed judgment about the plan. . . ." Conformably with the above reasoning the Court finds that use of Bankruptcy Rule 205 is an unnecessary and expensive burden for resolution of this narrow issue. Information

pertinent to the Chapter 11 Proposed Plan is made available under court auspices and an adequate statutory process. If information is sought to enforce the personal liability of Frey on the judgment rendered in foreclosure, a process is available by proceedings in aid of execution. Rule 205 should be implemented only for estate administration purposes, such as alleged concealment of assets, the need for appointment of an examiner or trustee, and similar purposes. There is demonstrated *instanter* no need to extend the inquisitorial process of Rule 205.

If it is apparent from an application for a Rule 205 examination that there is obvious irrelevant or improper information sought which would mandate court exclusion for the purposes sought, such abuse of process should not be permitted. Accordingly, it is hereby

ORDERED, that the application for a Rule 205 examination should be, in the court's discretion, *denied.*